## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

THOMAS FREDERICK,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:09-cv-947
Weber, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11) and the Commissioner's response in opposition. (Doc. 18).

### PROCEDURAL BACKGROUND

Plaintiff was born in 1959. He has a high school education and past relevant work as a maintenance worker for a water company. (Tr. 65, 67). Plaintiff filed an SSI application in December 2005 alleging a disability onset date of February 1, 1998, due to back problems, alcoholism and depression. (Tr. 56, 64). The application was denied initially and upon reconsideration. Plaintiff then requested and was granted a de novo hearing before administrative law judge (ALJ) Deborah Smith. (Tr. 201-225). Plaintiff, who was represented by counsel, appeared at the hearing. A vocational expert (VE) also appeared and testified at the hearing. (Tr. 218-224).

On November 20, 2008, the ALJ issued a decision denying plaintiff's SSI application.

(Tr. 14-26). The ALJ determined that plaintiff suffers from two severe impairments: (1) degenerative disc disease of the lumbar spine, and (2) alcoholism. (Tr. 19). However, the ALJ determined that if material, plaintiff's "substance addiction disorder," which plaintiff had minimized as a problem, was precluded from consideration as a disabling condition by § 105 Public Law 104-121. (*Id.*) The ALJ further determined that plaintiff's alleged depression was a non-severe medically determinable impairment. (*Id.*).

The ALJ found that plaintiff's back impairment does not meet the criteria of § 1.04 of the Listing of Impairments. (Tr. 20). The ALJ determined that plaintiff's abuse of alcohol would have some impact on his functional ability but that his "substance addiction disorder" does not meet the required level of severity specified in Listing 12.09. (Tr. 21). The ALJ concluded that plaintiff does not have impairments that meet or equal the requirements of any section of Appendix 1. (Tr. 20-21).

The ALJ determined that plaintiff retains the residual functional capacity (RFC) to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c), and he has the capacity to understand, remember, and carry out tasks other than those which are highly complex. (Tr. 21). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with plaintiff's RFC for medium work. (*Id.*). The ALJ determined that plaintiff is unable to perform any past relevant work. (Tr. 24). However, based on the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff could perform given the RFC to perform a range of medium work, and even if he

2

were limited to a range of light work with certain mental limitations, the VE testified to a number of jobs plaintiff could perform. (Tr. 25). Consequently, the ALJ concluded that plaintiff is not disabled under the Social Security Act and therefore not entitled to SSI. (Tr. 26).

The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner. (Tr. 4-6).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes him from performing the work he previously performed or any other kind of substantial gainful employment that exists in the

3

national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 416.920. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing, 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff's impairment need not precisely meet the criteria of the Listing in order for plaintiff to obtain benefits. It is sufficient if the impairment is medically equivalent to one in the Listing. 20 C.F.R. § 416.920(d). If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. *Id*. Fourth, if the individual's impairments do not meet or equal any in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1053 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 529 (6th Cir. 1981).

4

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984). Alternatively, in certain instances the Commissioner is entitled to rely on "the grid" to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2. *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk,* 667 F.2d at 538. In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In addition to the objective medical evidence, the Commissioner must consider other evidence of pain, such as statements or reports from plaintiff, plaintiff's treating physicians and others about plaintiff's prescribed treatment, daily activities, and efforts to work, as well as statements as to how plaintiff's pain affects his daily activities and ability to work. *Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994) (citing 20 C.F.R. § 404.1529(a)). Specific factors relevant to plaintiff's allegations of pain include his daily activities; the location, duration,

5

frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes; treatment other than medication plaintiff has received for relief of his pain; any measures plaintiff uses to relieve his pain; and other factors concerning his functional limitations and restrictions due to pain. *Id*.; 20 C.F.R. § 416.929(a). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish that he is disabled, *Duncan,* 801 F.2d. at 853, statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R. § 416.929(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id*.

Where the medical evidence is consistent and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, there is both substantially conflicting medical evidence as well as substantial evidence supporting a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*,

6

127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference."). Likewise, a

treating physician's opinion is entitled to weight substantially greater than that of a non-

examining medical advisor. *Kinsella,* 708 F.2d at 1060. If a treating physician's "opinion on the

issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record," the opinion is entitled to controlling weight. 20 C.F.R.

§ 416.927(d)(2); *see also Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004). "The treating

physician doctrine is based on the assumption that a medical professional who has dealt with a

claimant and his maladies over a long period of time will have a deeper insight into the medical

condition of the claimant than will a person who has examined a claimant but once, or who has

only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security Regulations recognize the importance of longevity of treatment,

providing that treating physicians "are likely to be the medical professionals most able to provide

a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective medical findings

alone or from reports of individual examinations, such as consultative examinations or brief

hospitalizations." 20 C.F.R. § 4164.927(d)(2). In weighing the various opinions, the ALJ must

consider factors such as the length, nature and extent of the treatment relationship, the frequency

of examination, the medical specialty of the treating physician, how well-supported by evidence

the opinions are, and how consistent an opinion is with the record as a whole. 20 C.F.R. §

7

416.927(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(d)(5).

## MEDICAL EVIDENCE

Dr. Loraine Glaser, M.D., a medical consultant, examined plaintiff on March 2, 2006. (Tr. 96-102). Plaintiff reported to Dr. Glaser that he suffered a back injury in the early 1990s, which led him to undergo two partial discectomies for two herniated discs. He did well following the surgery, returned to work, and was essentially pain-free for approximately six to eight years. Over the next five or six years preceding his examination by Dr. Glaser, he had been having pain which was exacerbated by twisting the wrong way or bending. The pain could last for several days. Pain radiated down his left leg and occasionally his left foot felt numb. He had not sought any medical treatment or evaluation due to lack of funds, and he was not seeing a physician at the time of the examination. He reported using alcohol "infrequently." Dr. Glaser diagnosed plaintiff with (1) "Low back pain H/O degenerative disc disease," untreated hypertension, and (3) "probable COPD with ongoing tobacco abuse." She summarized the findings of her manual muscle testing and physical examination as follows:

> In summary, this is a middle-aged man who states that he is unable to work due to low back pain and spasm for which he is currently receiving no medical attention. Twisting or bending seems to exacerbate his discomfort. The patient ambulates with a normal gait and had slight difficulty forward bending at the waist. There is no evidence of nerve root damage as all deep tendon reflexes are brisk, and all sensory modalities well-preserved. There is no evidence of muscle weakness or atrophy.

> Based on the findings of this examination, the patient appears capable of
> performing at least a mild to moderate amount of sitting, ambulating, standing,
> bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In
> addition, the patient has no difficulty reaching, grasping and handling objects.
> There are no visual and/or communication limitations nor are there environmental
> limitations.

(Tr. 98).

In May 2006, a state agency physician, Dr. Gary Hinzman, M.D., reviewed the file and completed an RFC assessment. (Tr. 125-132). Dr. Hinzman opined that plaintiff could occasionally lift and/or carry and push and/or pull up to 50 pounds; frequently lift and/or carry and push and/or pull up to 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. He found plaintiff was not limited in his ability to climb, balance, stoop, kneel, crouch or crawl. (Tr. 127). As supporting evidence, Dr. Hinzman noted the consultative exam findings that plaintiff had a normal range of motion in all extremities, he had no atrophy, he did not display any weakness, he had a normal gait, and he got on and off the exam table without difficulty. A non-examining state agency physician, Dr. Walter Holbrook, M.D., affirmed the RFC assessment as written in July 2006. (Tr. 124).

After plaintiff had been approved for a medical card, he was seen in Dr. Chetna Mital, M.D.'s office numerous times between September 20, 2006 and May 2008. (Tr. 152-167). At his initial visit, Dr. Mital prescribed Voltaren 75 mg and recommended an MRI. (Tr. 167). Plaintiff had an MRI in October 2006 which showed mild disc bulging at L3-L4 and L4-L5 without significant spinal stenosis. (Tr. 135).

Plaintiff next saw Dr. Mital on October 16, 2006. (Tr. 166). According to Dr. Mital's office notes, plaintiff reported that "his legs tingle off and on compared to how it had been constant. He thinks he can live with it. Had MRI done and legs tingle because of the disc,

9

Voltaren helps . . . Admits to drinking a [sic] least a 6 pack daily." The objective findings as

disclosed by the MRI were noted to be a bulging disc and L3-4 and L4-L5, some stenosis, and

degenerative disc changes. The plan was to continue the present therapy. Dr. Mital offered to

place plaintiff in a detoxification program for alcohol abuse, but plaintiff declined.

On November 13, 2006, Dr. Mital reported that plaintiff still had some problems with

pain in the low back "but for the most part states it is much better since taking Voltaren." (Tr.

165). Dr. Mital provided refills for Voltaren at plaintiff's request.

Dr. Mital's office notes of numerous subsequent visits for various ailments either do not

mention plaintiff's back pain or simply state that plaintiff is to continue his present treatment

plan for his back pain or follow up with the treating neurologist. (Tr. 153-164). There is a

specific notation on January 9, 2007, that plaintiff needed refills on Voltaren, "which controls the

back pain well," and a notation on October 26, 2007, that "Back pain is controlled." (Tr. 159,

164). The next specific notation is dated May 6, 2008, when plaintiff brought a form for Dr.

Mital to complete "to help get clearance to keep from working." (Tr. 152.). Plaintiff complained

of problems with continuing low back pain and with bending over, which caused a sharp pain

that ran down his lower left extremity. The assessment was "essentially unremarkable except the

pain to the low spinal area." (Id.)

Dr. Mital completed an RFC assessment on July 1, 2008. (Tr. 184-188). He opined that

plaintiff could never lift/carry less than 10 pounds; he could never twist, stoop or climb ladders;

and he could rarely crouch/squat and climb stairs; he could stand/walk less than 2 hours in an 8-

hour working day; he would need to walk for 5-10 minutes approximately every 15 minutes; he

would need to shift positions at will; and he would sometimes need to take unscheduled breaks.

10

Plaintiff's pain and symptoms were frequently severe enough to interfere with the attention and

concentration needed to perform even simple work tasks. Plaintiff did not need a cane or other

assistive device. He had significant limitations with reaching, handling or fingering. Dr. Mital

estimated that plaintiff was likely to be absent from work about three days per month as a result

of his impairments or treatment. Dr. Mital reported the clinical findings and objective signs

supporting his opinion as an MRI showing a bulge at L3-L4 and L4-L5, spinal disc disease and

arthritis. The symptoms were low back pain which was constant with movement and for which

plaintiff obtained mild relief with rest.

Plaintiff saw neurologist Ashraf Nassef, M.D. on four occasions between August 2007

and May 2008.[1]  (Tr. 147-150).  On August 23, 2007, Dr. Nassef reported that plaintiff was in for

follow-up and had a history of back pain with lumbosacral radiculopathy and sacroiliac arthrosis

on the left.  (Tr. 150).  Plaintiff had been complaining of lower left extremity pain, weakness and

numbness. A May 2007 EMG showed some neuropathic changes involving mostly L5 and to a

lesser extent "S1 more on the left side with no active denervation." Lotrel 5 mg for pain seemed

to be "helping him well" together with Zanaflex 4 mg. Left S1 joint block was pending

insurance approval. Follow-up was to take place in four months, and earlier than that if

necessary.

Dr. Nassef saw plaintiff again on December 13, 2007.  (Tr. 149).  Plaintiff "seem[ed] to

be doing well" on the Lortab and Zanaflex and he was to continue on those medications with no

change. Plaintiff did not show any significant tenderness on palpation and no other new focal

---

[1]Plaintiff states that he began treatment with Dr. Nassef in April of 2007, but the earliest
treatment notes he submits from Dr. Nassef are dated August 2007.

11

deficits were noted. Plaintiff was to return in two months or earlier if needed.

Dr. Nassef next saw plaintiff on March 4, 2008, and noted no new deficits on examination. (Tr. 148). Plaintiff had done well on his medications. He had some tenderness over the S1 joint and the lumbar paraspinal area and some radicular symptoms for which Dr. Nassef was going to try to preauthorize epidural injections.

Dr. Nassef saw plaintiff again on May 29, 2008. (Tr. 147). Dr. Nassef noted that plaintiff had done well for a while but felt that his pain medication did not last long enough, so Dr. Nassef was going to increase the Lortab to three tablets per day. The examination showed tenderness over the lumbosacral area with decreased range of movement and tenderness over the S1 joint on the left, but with no other focal deficits. Dr. Nassef advised plaintiff that if his symptoms did not improve, he might be a candidate for epidural steroid injections.

On November 4, 2008, Dr. Nassef completed an RFC assessment. (Tr. 194-198). His diagnoses included degenerative disc disease and lumbar radiculopathy. He opined that plaintiff could lift/carry less than 10 pounds rarely; sit for at least 6 hours but for no more than 30 minutes at a time; and stand/walk less than 2 hours with use of a cane or other assistive device as needed. Plaintiff would need to walk every 90 minutes for 1 to 5 minutes and take frequent 30-minute unscheduled breaks during an 8-hour work day. He could not walk any city blocks without severe pain. Dr. Nassef also opined that plaintiff needed a sit/stand option, could rarely twist, and could never climb ladders, stoop, crouch/squat or climb stairs. He identified the clinical findings and objective signs supporting his opinion as tenderness over the lumbosacral area and over the left SI joint.

12

**OPINION**

Plaintiff's single assignment of error in this case is that the ALJ erred in determining his

RFC. Plaintiff argues that the ALJ erroneously (1) failed to give controlling weight to the RFC

opinions of plaintiff's treating physicians, Dr. Mital and Dr. Nassef, (2) failed to adequately

articulate why she rejected the RFC assessments from the treating physicians, and (3) rendered an

RFC determination which is not supported by substantial evidence. The Court will initially

address plaintiff's first and second contentions as they relate to the RFC assessment and opinion

of his treating neurologist, Dr. Nassef.

Plaintiff argues that the ALJ erred by not discussing Dr. Nassef's RFC assessment at all

in her decision, by not analyzing Dr. Nassef's RFC opinion showing that he is disabled, and by

not determining what weight to accord that assessment. Plaintiff fails to mention that Dr.

Nassef's RFC assessment is dated November 4, 2008, and was not before the ALJ at the time of

the October 27, 2008 hearing. The Commissioner likewise does not discuss in the opposing

memorandum the fact that plaintiff did not submit Dr. Nassef's RFC assessment until after the

ALJ hearing. Notwithstanding the parties' failure to address this issue, the Court must decide

whether it can include the RFC assessment in its substantial evidence review, which in this case

is limited to the evidence before the ALJ. *See Casey v. Sec.'y*, 987 F.2d 1230, 1233 (6th Cir.

1993) (where the Appeals Council has denied review, the Court reviews the ALJ's decision on

appeal and not the denial of review by the Appeals Council). Thus, the initial issue before the

Court is whether Dr. Nassef's RFC assessment may be considered as part of the "administrative

record" before the ALJ.

Counsel for plaintiff represented to the Appeals Council that his office had received the

13

RFC assessment on November 4, 2008, more than four months after first requesting it from Dr.

Nassef, and had filed it with the ALJ on November 11, 2008, nine days before the ALJ issued her

decision. (Tr. 190). The record shows that the Appeals Council received the RFC assessment

and made it part of the record on October 30, 2009. (Tr. 7). However, plaintiff has pointed to

nothing in the record to show that Dr. Nassef's RFC assessment was actually filed with the ALJ's

office prior to the date she issued her decision. Plaintiff does not allege that counsel faxed,

mailed or hand-delivered the report to the ALJ and has offered no proof of transmittal or

delivery. Thus, there is no indication that counsel did in fact submit the RFC assessment to the

ALJ or that the ALJ actually received the RFC assessment. Absent any offer of proof by plaintiff

that counsel submitted the RFC assessment to the ALJ prior to the date she rendered her

decision, the RFC report cannot be considered as part of the Court's substantial evidence review.

However, because the RFC assessment was presented to the Appeals Council, it is

appropriate to consider whether remand of the case is warranted under Sentence Six of Section

405(g) so that the ALJ can consider the evidence. *Cline v. Commissioner of Social Security*, 96

F.3d 146, 148 (6th Cir. 1996). In order for the district court to remand the case, plaintiff must

show that the evidence is new and material and that there was good cause for not presenting it in

the prior proceeding. *Id*. Evidence is "new" if it was not in existence or available to plaintiff at

the time of the administrative proceeding. *See Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990);

*Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). Evidence is considered "material" if "there

is a reasonable probability that the [Commissioner] would have reached a different disposition of

the disability claim if presented with the new evidence." *Foster,* 279 F.3d at 357 (citations and

internal quotation marks omitted). *See also Sizemore v. Secretary*, 865 F.2d 709, 711 (6th Cir.

**14**

1988). To show "good cause," the moving party must present a valid justification for failing to

acquire and present the evidence in the prior administrative proceeding. *Foster*, 279 F.3d at 357.

*See also Oliver v. Secretary of H.H.S.,* 804 F.2d 964, 966 (6th Cir. 1986); *Willis v. Secretary of*

*H.H.S.*, 727 F.2d 551, 554 (6th Cir. 1984).

     Dr. Nassef's RFC assessment is "new" in the sense that it did not exist prior to the

administrative hearing and was never reviewed by the ALJ. *See Clark v. Commissioner of Social*

*Sec.*, Case No. 1:08-cv-70, 2009 WL 1546355, at *4 (S.D. Ohio May 28, 2009). However, the

fact that the RFC report was prepared after the hearing is insufficient to satisfy the good cause

requirement if the evidence could have been obtained prior to the hearing. *See Oliver*, 804 F.2d

at 966. Plaintiff has failed to present a valid justification for not acquiring and presenting Dr.

Nassef's RFC report prior to the ALJ hearing. The RFC assessment is not based on new

evidence, so it could have been prepared prior to the ALJ hearing. Plaintiff has not addressed his

failure to obtain the RFC assessment prior to the hearing in his Statement of Errors. Counsel

generally alleged in the appeal filed with the Appeals Council that he was unable to obtain the

RFC assessment until one week after the hearing despite having requested it over four months

earlier and "[d]espite great effort" to procure the report, but counsel does not specify what

attempts he made to obtain the RFC assessment. Plaintiff has therefore failed to carry his burden

of providing a valid reason for his failure to obtain the evidence prior to the hearing.

     Assuming there is good cause for plaintiff's failure to obtain Dr. Nassef's RFC

assessment prior to the hearing, remand nonetheless is not warranted because the evidence is not

material. It is not reasonably probable that the ALJ would have found plaintiff disabled had she

reviewed the RFC assessment. Rather, the ALJ likely would have determined that Dr. Nassef's

RFC opinion is not supported by the objective evidence for the same reasons she rejected Dr. Mital's RFC opinion. Dr. Nassef's assessment is similar to that of Dr. Mital. The ALJ determined that Dr. Mital's opinion was entitled to little weight because it appears that plaintiff was seen more frequently by Dr. Nassef than by Dr. Mital[2]; Dr. Nassef's records do not reflect test findings supporting an RFC of less than sedentary work and do not show ongoing neurological deficits often associated with disabling back pain; Dr. Mital's RFC assessment indicates that plaintiff cannot lift/carry more than 10 pounds or stand/walk more than 2 hours, but his treatment notes either state plaintiff's back pain is controlled, they are silent as to the disabling effects of the pain, or they do not show treatment for it on many dates when plaintiff was seen by the doctor; other records do not show ongoing neurologic deficits associated with a severe and disabling back condition; and plaintiff does not have a treatment history which substantiates disabling back pain. (Tr. 25-26).

While Dr. Nassef's opinion would ordinarily be entitled to greater weight than that of Dr. Mital since he is a neurologist who treated plaintiff specifically for his back problems, that is not the case here. Rather, Dr. Nassef's clinical and objective findings reported on the RFC report are less definitive than those of Dr. Mital, consisting solely of tenderness over the lumbosacral area and over the left S1 joint. (Tr. 194). The ALJ was therefore likely to determine that Dr. Nassef's findings do not substantially support the severe limitations of his RFC assessment. Moreover, Dr. Nassef's office notes for the first three of plaintiff's four visits indicate that plaintiff's back pain was well-controlled by his medications. (Tr. 147-150). Although Dr. Nassef stated that he

---

[2]The basis for this statement is unclear. The evidence indicates that plaintiff was seen many more times in Dr. Mital's office than he was seen by Dr. Nassef.

was looking into the possibility of epidural steroid injections for plaintiff's radicular symptoms, the only change he made in plaintiff's treatment was to increase one pain medication from two to three tablets per day. Dr. Nassef provides no explanation in the RFC report as to why plaintiff was so severely restricted when Dr. Nassef had prescribed only a conservative course of treatment and had acknowledged that the medications largely controlled plaintiff's pain. Thus, plaintiff has not demonstrated a reasonable probability that had Dr. Nassef's RFC assessment been before the ALJ, she would have reached a different conclusion. Having failed to show that Dr. Nassef's RFC opinion is material, the Court finds that a Sentence Six remand for consideration of the evidence by the ALJ is not warranted.

Plaintiff's contentions as they relate to Dr. Mital likewise are not well-taken. Plaintiff argues that the ALJ erroneously failed to give controlling weight to the RFC opinion of Dr. Mital and to adequately articulate why she rejected his RFC assessment. The ALJ, though, stated in detail her reasons for rejecting Dr. Mital's opinion. The ALJ's decision is supported by substantial evidence because she could reasonably determine that Dr. Mital's opinion is not well-supported by the medical evidence and is inconsistent with his own treatment notes and plaintiff's subjective complaints. Dr. Mital identified the clinical findings and objective signs as an MRI showing a bulge at L3-L4 and L4-L5, spinal disc disease and arthritis. He characterized plaintiff's pain as low back pain which was constant with movement and noted that plaintiff was able to obtain mild relief with rest. However, Dr. Mital's own treatment notes do not support a finding of disabling pain and the limitations he imposed. According to Dr. Mital's notes, plaintiff complained of back pain only a handful of times over the course of approximately 20 months and on those few occasions, he never complained of severe or disabling pain. To the

17

contrary, the medical records indicate that plaintiff reported to Dr. Mital that his pain was adequately managed by his medications. After being prescribed Voltaren on the first visit, on two subsequent visits plaintiff complained of intermittent leg tingling which he thought he could live with and which was helped by his medication, and he also reported pain in the low back which for the most part was much improved since taking Voltaren. (Tr. 165-167). Nine months before Dr. Mital completed the RFC assessment, plaintiff reported that his back pain was controlled. (Tr. 159). Based on the mild nature of plaintiff's complaints and the conservative course of treatment Dr. Mital had prescribed for him, the ALJ was justified in rejecting the severe limitations which Dr. Mital imposed on plaintiff in the RFC assessment.

Plaintiff's final contention is that the ALJ's determination that he had the RFC to perform medium work is not supported by substantial evidence. Plaintiff alleges that the ALJ improperly relied on (1) the opinions of state agency physicians, who never examined him and who completed their assessments before he had even begun medical treatment, and (2) the opinion of Dr. Glaser, who found plaintiff was capable of performing mild to moderate work-related activities, which is clearly more restrictive than medium work.

Dr. Glaser opined that plaintiff "appears capable of performing at least a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In addition, the patient has no difficulty reaching, grasping and handling objects." (Tr. 98). Though somewhat imprecise, Dr. Glaser's finding that plaintiff can do "at least a mild to moderate amount" of the activities which are required for medium work (*see* 20 C.F.R. § 416.967(c)) supports a finding that plaintiff is capable of performing work at this exertional level. Her findings are consistent with the RFC assessment completed by the non-examining

18

state agency physician, who reasonably relied on an absence of objective clinical findings to find

that plaintiff could perform work activities of a medium exertional level. (Tr. 125-132). The

physician noted that plaintiff had full strength, normal grasp strength, and a normal gait, he did

not require any ambulatory aids, he did not have any atrophy, he did not display any weakness,

and he was able to get on and off the exam table without difficulty. (Tr. 126). Although Dr.

Glaser rendered her opinion before plaintiff had begun treatment with Dr. Mital and Dr. Nassef,

nothing in these physicians' progress notes from 2006 through 2008 shows any significant

changes in plaintiff's condition to explain the severe limitations imposed by them. In view of the

conflicting evidence in the record, it was the ALJ's prerogative to discredit Dr. Mital's opinion

on plaintiff's RFC in view of the opinions of Dr. Glaser and the state agency physician. *See*

*Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927 (6th Cir. 1987).

      If Dr. Glaser's opinion is interpreted to mean that plaintiff is limited to less than medium

work, the ALJ's decision that plaintiff has the RFC to perform work that exists in significant

numbers in the national economy is still supported by substantial evidence. The ALJ asked the

VE if there were jobs plaintiff could perform assuming he was limited to light work with certain

mental limitations. The VE testified that plaintiff could do the job of packager, with 8,790 such

jobs existing locally and 726,910 nationally, and assembler, with 860 jobs existing locally and

148,925 nationally. (Tr. 220-221). Plaintiff does not contend that this is an insignificant number

of jobs.

      Accordingly, the ALJ did not err by failing to give controlling weight to the opinions of

his treating physicians, by failing to articulate her reasons for rejecting the treating physicians'

RFC, or by making the RFC determination she rendered. The ALJ's finding of nondisability is

supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED**.

Date: _1/4/2011_

Karen L. Litkovitz
United States Magistrate Judge

20

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

THOMAS FREDERICK
    Plaintiff,

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Civil Action No. 1:09-cv-947

Weber, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).